SAUL SILVERMAN SCRAP &
SALVAGE CO., INC.

v.

HANNAH INLAND WATERWAYS
CORP. et al.

Civ. A. Nos. 77–269, 77–270 and 77–271.

United States District Court,
E. D. Louisiana.

May 1, 1981.

William J. Manion, Metairie, La., for plaintiff.

Hal C. Welch, New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Saul Silverman Scrap & Salvage Co., Inc., Gerrets Marine Service, Inc. and Gerrets Shipbuilding, Inc. are corporations organized and existing under the laws of the State of Louisiana.

2. Defendant, Hannah Inland Waterways Corporation, is the bareboat charterer and owner pro hac vice of the barge Chalmed No. 1, hereafter described.

3. This case involves the sinking of the dredge Burlington, a vessel constructed in 1913 and owned by Saul Silverman Scrap & Salvage Co., Inc. The Burlington measured 152′ × 42′6″ × 9′ and had been purchased by Saul Silverman Scrap & Salvage Co., Inc. for $7,000. When the dredge Burlington sank, it took with it the tug Virginia Ann, a vessel constructed in 1879 and owned by Gerrets Marine Service, Inc. Several weeks after the sinking of the Burlington, the barge G1, measuring 100′ × 30′ × 7′ apparently broke its moorings and drifted over the boilers of the submerged Burlington, ripping its bottom. The G1 was owned by Saul Silverman Scrap & Salvage Co., Inc.

4. Plaintiffs allege that the sinking of the barge Burlington resulted when the Chalmed 1, an oceangoing barge measuring 356′ × 56′ × 19′ with a draft of between 7′6″ and 8′, rode up upon the deck of the Burlington and pushed the barge under, causing it to sink.

5. In January, 1976, Donald C. Hannah, president of Hannah Inland Waterway Corporation, contacted John A. Gerrets, president of Saul Silverman Scrap & Salvage Co., Inc., Gerrets Marine Service, Inc. and Gerrets Shipbuilding Corporation, Inc., regarding proposed repairs and refurbishment of Chalmed 1 at Gerrets' facility located on the Mississippi River Gulf Outlet.

6. In furtherance of the objective noted above, on January 26, 1976, Chalmed 1 was towed to Gerrets' facility and moored by personnel from the delivering tug and personnel from Gerrets' shipyard.

7. Hannah and Gerrets entered into negotiations for certain repairs and refurbishments to be performed on the Chalmed 1. Thereafter, a written bid was sent to Hannah by letter of March 16, 1976, and Han-

nah was asked to accept or reject the bid within ten days. Hannah did not accept or reject the bid, and further discussions followed between the parties. Then, on April 7, 1976, Gerrets informed Hannah by mailgram that he should either have the barge removed by April 9, 1976 or pay $950. A discussion followed receipt of the mailgram, and, on April 16, Hannah sent a check for $950.

8. During this period and up to May 1, 1976, the Chalmed 1 continued to be moored at Gerrets' shipyard.

9. Although it is alleged that ultimately Gerrets insisted that Hannah move Chalmed 1 from his facility, Gerrets' testimony is contested by Hannah, who asserted that he understood that the barge could remain at the yard pending further negotiations regarding repairs either by Gerrets' yard or some other repair facility. Hannah's testimony is supported by the fact that the vessel remained in the yard even after the events at issue.

10. The acceptance of Hannah's check for $950 on April 16, 1976, as well as the fact that no written correspondence on this subject was presented to the court concerning the time period from April 16, 1976 to the date on which the incident in question occurred (either April 30, 1976 or May 1, 1976) leads to the conclusion that plaintiff has failed to carry the burden of proof regarding the contention that Chalmed 1 was, in effect, a trespasser.

11. Between April 30, 1976 and May 1, 1976, Burlington sank and took with it the tug Virginia Ann which was moored to its port side.

12. Albert Bennett, a commercial diver, found no damage to Burlington of recent origin nor underwater damage to Chalmed 1. He did find open hatches on Burlington, confirming the acknowledgement by John Gerrets and Eugene Ellzey (a former employee of Gerrets) that these hatches, together with additional man holes, were open prior to the sinking.

13. Burlington had, at most, 2 to 2½' of freeboard at all times pertinent, and photographs introduced at trial and taken approximately one month prior to the sinking indicated significantly less freeboard. Gerrets and Ellzey both acknowledged that passing vessels created wavewash that was at times in excess of the freeboard of Burlington and acknowledged that the dredge was pumped at least three times a week.

14. The only testimony introduced by the plaintiff dealing with causation was the opinion testimony of Peter O'Connell, a former marine surveyor who surveyed the salvage tug Virginia Ann on June 25, 1976, but who had not actually seen Chalmed 1, though he had reviewed her plans. O'Connell testified that it was possible that the Chalmed 1 could have overridden Burlington but acknowledged that Burlington may, as likely, have sunk due to wavewash entering the open areas of that dredge's deck or because of leaks. Although O'Connell testified that it was possible for a barge such as the Chalmed 1 to override Burlington and cause no damage to either vessel, I find that unlikely. Both Bill Reeves, an expert marine surveyor, and Arthur Sargent, an expert naval architect and marine engineer, testified that they would expect damage to be inflicted to both vessels if this had happened. Furthermore, Reeves and Sargent state that, in their opinion, it would be physically impossible for Chalmed 1, with its 7½' to 8' draft, to be lifted up by wavewash to the extent necessary to override Burlington. I agree.

15. Neither the initial mooring of Chalmed 1 nor its remooring were performed by Hannah employees but by independent contractors hired by Gerrets or by Gerrets' employees.

### Conclusions of Law

1. This court has jurisdiction.

2. Plaintiffs have failed to carry the burden of proof both with respect to status (trespasser) and with respect to causation.

Counsel for defendant is instructed to prepare a judgment consistent with these findings and conclusions.